UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **BRANDON J. KING,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )     No. 3:20-cv-00379 |
| | ) |
| **ANTONIO CHAMBERS,** *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Antonio Chambers' Motion to Dismiss (Doc. No. 32) Brandon J. King's claim for excessive force brought under 42 U.S.C. § 1983. Chambers argues King fails to state a claim upon which relief can be granted and/or he is entitled to dismissal based upon qualified immunity. Although Chambers's arguments may ultimately prevail, they are premature and his motion will be denied based upon the current record.

Because this case is before the Court on a Motion to Dismiss, the factual allegations set forth in the First Amended Complaint are accepted as true. Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1927 (2019). Those allegations suggest the following:

From November 27, 2019 until July 28, 2020, King was incarcerated in the mental health ward of the Davidson County detention center. (Doc. No. 18, First Amended Complaint ¶ 9). During that incarceration Chambers, a correctional officer, repeatedly taunted and threatened King. (Id. ¶ 10). This included threatening to beat-up or "f**k-up" King, and calling him a "bi*ch." (Id. ¶ 11). Oftentimes this was done in front of Brenae Briggity, another correctional officer, who King purportedly had some sort of interest in. (Id. ¶ 12)

Friday, May 15, 2020, was no different than others to the extent that Chambers repeatedly

embarrassed King in front of Briggity throughout the day. (Id. ¶ 13). This culminated in Chambers ordering King to exit his cell and "cuff-up," so that King could be placed in a restraint chair, even though there was no reason for the command. This occurred in plain view of Briggity – but outside the presence of any supervisors – and enabled Chambers to "show off for Briggity," while at the same time punishing and embarrassing King. (Id. ¶ 14). It also contravened the Sheriff department policy regarding the use of restraint chairs, which is limited to inmates who exhibit dangerous, self-injurious, or assaultive behavior. (Id. ¶ 15) The policy also requires that "the entire incident" involving the restraint's chairs use be video recorded. (Id.).

Because King was not acting, and had not acted inappropriately, he told Chambers he would not exit his cell, nor would he submit to being strapped into the restraint chair. (Id. ¶¶ 16, 17) Frustrated and angry, Chambers continued to hurl threats and insults towards King. Ultimately, Chambers summoned his supervisors, Sergeants Lloyd and (now Lieutenant) Popovitch. (Id. ¶ 18).

When the supervisors arrived on the scene, Chambers incorrectly told them that he had been threatened by King, instead of truthfully informing them that there was no basis for use of the restraint chair. (Id. ¶ 19). Hearing Chambers' version of events, Sergeants Lloyd and Popovitch instructed King to "just do what [Chambers] says." (Id. ¶ 20). King again refused, whereupon Sgt. Popovitch sprayed King with mace in an effort to force compliance. King continued to refuse but, being in "immense pain," and threatened to be maced again, King relented and was placed in the chair. (Id. ¶ 21).

King was taken to the nursing station for decontamination. Even so, he felt "burning" from the mace for the next four days and he had "respiratory complications" from the incident for an entire month. (Id. ¶ 22).

Having accepted these facts as true, the question becomes whether King has stated a *plausible* excessive force claim against Chambers. See, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (stating that to survive a motion to dismiss, a complaint must allege "enough facts to state a claim [for] relief that is plausible on its face"). And, for purposes of Chambers' qualified immunity defense, the question is whether King has alleged facts that "plausibly mak[e] out a claim that [Chambers'] conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." Johnson v. Moseley, 790 F.3d 649, 653 (6th Cir. 2015).

Chambers insists that King has not stated a plausible claim, nor has he overcome the qualified immunity defense. Chambers writes:

> Plaintiff does not allege that Cpl. Chambers used any force at all; he clearly states that Lt. Popovitch sprayed him with pepper spray. Moreover, because Plaintiff alleges that Lt. Popovitch was Cpl. Chambers's supervisor, there is no supervisory liability as to Cpl. Chambers. Plaintiff asserts that Cpl. Chambers's and Lt. Popovitch's actions leading up to the use of force were "joint and several," but he has not alleged that Cpl. Chambers was personally involved in, or causally connected to, the actual use of force.

(Doc. No. 33 at 3).

Chambers is correct that (1) "a § 1983 plaintiff generally must prove both that a defendant was personally at fault and that the defendant's culpable conduct (not somebody else's) caused the injury," Pineda v. Hamilton Cty., 2020 WL 5868402, at *3 (6th Cir. Oct. 2, 2020), and (2) King specifically alleges that Sergeant Popovitch is the one who maced him. This, however, does not mean that judgment in Chamber's favor is appropriate at this time.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United

3

States (2) caused by a person acting under the color of state law." Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir.2006). Therefore, King must show that Chambers "was 'personally involved' in the use of excessive force," Burley v. Gagacki, 729 F.3d 610, 619 (6th Cir. 2013), which is to say that Chambers "was the 'moving force' behind the alleged deprivation of his federal rights." Powers v. Hamilton Cty. Pub. Def. Comm'n, 501 F.3d 592, 608 (6th Cir. 2007).

Whether Chambers was "personally involved" or a "moving force" is an unanswered question at this point. True, Sergeant Popovitch was the one who actually maced King, but who knows what Chambers told his supervisors when he summoned them, or what he may have said once they arrived on scene. Maybe Chambers knew the mere calling of his supervisors would result in King being maced, or maybe Chambers knew that Sgt. Popovitch maced anybody who Chambers said was unruly. This, of course, is speculation at this point, but it is entirely plausible that Chambers knew beyond peradventure of doubt that simply summoning Sgt. Popovitch and telling him a story about King's purported misbehavior would result in King being maced.

Such conceivable scenarios are appropriate to consider because Section 1983 "'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Malley v. Briggs, 475 U.S. 335, 345 n.7 (1986) (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961)). Therefore, "[t]raditional tort concepts of causation inform the causation inquiry," and these include the requirements that there be both cause in fact and proximate cause. Powers, 502 F.3d at 608.

"Conduct is the cause in fact of a particular result if the result would not have occurred but for the conduct. Similarly, if the result would have occurred without the conduct complained of, such conduct cannot be a cause in fact of that particular result.'" Id. (quoting Butler v. Dowd, 979

4

F.2d 661, 669 (8th Cir.1992)). Proximate cause is "a matter of foreseeability," with the question being "whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct. Even if an intervening third party is the immediate trigger for the plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable." Id.

Construed in King's favor, the Amended Complaint plausibly alleges cause in fact because, but for Chamber's lying about the events, Popovitch might have never come to the scene. As for proximate cause that is something only discovery can answer because there are any of a number of plausible hypotheticals that could support the conclusion that it was reasonably foreseeable to Chambers that King would be maced once Chambers called for unneeded assistance (or so the allegations go).

Nor does Chambers' immunity defense entitle him to dismissal at this point because it is based upon his contention that he did not deprive King of a constitutional right. "Although an officer's 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point,' . . . it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." Wesley v. Campbell, 779 F.3d 421, 433 (6th Cir. 2015) (quoting Vakilian v. Shaw, 335 F.3d 509, 516 (6th Cir. 2003)). Only discovery will show what Chambers told Sgt. Popovitch, and what Chambers' believed would happen once he allegedly misinformed him that King was not following instructions, or worse. See Marvaso v. Sanchez, 971 F.3d 599, 605 (6th Cir. 2020) (noting that overcoming the qualified immunity defense at the motion to dismiss stage is a "low bar" and that "this Court generally denies qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a

5

plausible claim for relief").

Nor can the Court say that Chambers would be unaware that he might be subject to liability were it to be shown that he caused the violation of King's constitutional rights. The notion that traditional tort liability concepts apply to Section 1983 actions was clearly established no later than 1986, when the Supreme Court said as much in Malley and reiterated that an individual is responsible for the natural consequences of his or her actions. Further, it has long been established that gratuitous force "is obviously inconsistent with a general prohibition on excessive force," Griffith v. Coburn, 473 F.3d 650, 659–60 (6th Cir. 2007), and decades ago the Sixth Circuit indicated that macing an individual who poses little or no threat to the safety of officers or others is not objectively reasonable, see Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1994). Of course the Court knows nothing about King, other than he claims he was not misbehaving and was confined to a solitary cell in the mental health unit, and knows nothing about what happened on May 15, 2020, other than King was maced after Popovitch was summoned by Chambers. This lack of evidence is insufficient to let Chambers off the hook this early in the proceedings, and the allegations that King has made against him are enough to support a *plausible* claim of the violation of a constitutional right.

Accordingly, Chambers' Motion to Dismiss (Doc. No. 32) is **DENIED** and this case is returned to Magistrate Judge Frensley for further pretrial case management.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE