UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **BRANDON J. KING,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 3:20-cv-00379 |
| | ) |
| **ANTONIO CHAMBERS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

In this excessive force case brought under 42 U.S.C. § 1983, Defendants Corporal Antonio Chambers and Lieutenant Philip Popovitch filed a Motion for Summary Judgment (Doc. No. 70) on November 19, 2021. Because Plaintiff Antonio Chambers did not file a response in opposition to Defendants' Statement of Undisputed Material Facts (Doc. No. 72) within 28 days as required by the Initial Case Management Order (Doc. No. 41), the Court can consider those facts as true for purposes of the motion. Fed. R. Civ. P. 46(e)(3); L.R. 56.01(f). Those facts are as follows:

1. In March 2020, Plaintiff was a pretrial detainee in the Davidson County Sheriff's Office ("DCSO") Maximum Correctional Center ("MCC") on Harding Place in Nashville.

2. On the night of March 15-16, 2020, Plaintiff was shouting, banging on his cell door, standing on the sink and toilet in his cell, and masturbating.

3. DCSO officers told Plaintiff to stop banging on his door, shouting, and masturbating, but he refused their commands and continued this behavior.

4. Early on the morning of March 16, 2020, DCSO officers told Plaintiff to submit to restraint and come out of his cell[.]

5. Plaintiff refused DCSO officers' commands to submit to restraint.

6. Early on the morning of March 16, 2020, Lt. Popovitch ordered Plaintiff to submit to restraint three times.

7. Plaintiff shouted at DCSO officers, "I'm gonna pop one of your bitch asses when I get out!" and "I'll beat your ass!"

8. Plaintiff threatened Cpl. Chambers at some point on the night of March 15-16, 2020.

9. Responding to Lt. Popovitch's commands to submit to restraint, Plaintiff shouted, "No!"

10. Lieutenant Michael Graulau sprayed a single burst of pepper spray into Plaintiff's cell early on the morning of March 16, 2020.

11. Cpl. Chambers did not spray Plaintiff with pepper spray on March 16, 2020.

12. Within minutes after Plaintiff's cell was sprayed, DCSO officers secured him with hand and leg restraints.

13. DCSO officers immediately took Plaintiff to a separate part of the jail, where a nurse flushed his eyes and face with water.

14. Plaintiff requested no further treatment and was taken back to his cell without incident.

15. Plaintiff never appealed any grievance related to the use of pepper spray in his cell on March 16, 2020.

(Doc. No. 72 at 1-4) (internal citations to record omitted).

Even though the foregoing facts are deemed true and Defendants' motion stands unopposed, it is still incumbent on the Court to decide whether those facts and the record as a whole make the grant of summary judgment under Rule 56 appropriate. F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 630 (6th Cir. 2014); Yeschick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012). "[R]eview is limited to determining 'whether the facts, as presented by the defendants, require[] a determination that they [are] entitled to judgment as a matter of law." Rhea v. W. Tennessee Violent Crime & Drug Task Force, 825 F. App'x 272, 277 (6th Cir. 2020) (quoting Guarino v. Brookfield Twp.

Trustees, 980 F.2d 399, 407 (6th Cir. 1992)). Nevertheless, the "party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact." Carver v. Bunch, 946 F.2d 451, 454 (6th Cir. 1991). Defendants have met that burden in three different ways.

First, under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). This includes suits by pretrial detainees against their jailers. Napier v. Laurel Cty., 636 F.3d 218, 222 (6th Cir. 2011).

The DCSO has a grievance policy (Doc. No. 73-1) and the procedures are set forth in the inmate handbook that is available to an inmate upon intake. (Doc. No. 73-2). The policy requires any "complaint about a jail policy, practice, condition or employee" be put in writing and placed in the "Grievance Box" or given to a mail clerk. (Doc. No. 73-2 at 16). If an inmate disagrees with the response, he or she can appeal to the "facility administrator." (Id.). According to Wayne Miller, DCSO's Records Technician, Plaintiff did not file a grievance in relation to the pepper spray incident that occurred on March 16, 2020, let alone appeal any adverse determination. (Doc. No. 73, Miller Decl. ¶¶ 3, 4).

Second, "Section 1983 imposes liability only on a defendant who was personally involved in the unconstitutional action that caused the plaintiff's injury." Pineda v. Hamilton Cty., 977 F.3d

3

Trustees, 980 F.2d 399, 407 (6th Cir. 1992)). Nevertheless, the "party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact." Carver v. Bunch, 946 F.2d 451, 454 (6th Cir. 1991). Defendants have met that burden in three different ways.

First, under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). This includes suits by pretrial detainees against their jailers. Napier v. Laurel Cty., 636 F.3d 218, 222 (6th Cir. 2011).

The DCSO has a grievance policy (Doc. No. 73-1) and the procedures are set forth in the inmate handbook that is available to an inmate upon intake. (Doc. No. 73-2). The policy requires any "complaint about a jail policy, practice, condition or employee" be put in writing and placed in the "Grievance Box" or given to a mail clerk. (Doc. No. 73-2 at 16). If an inmate disagrees with the response, he or she can appeal to the "facility administrator." (Id.). According to Wayne Miller, DCSO's Records Technician, Plaintiff did not file a grievance in relation to the pepper spray incident that occurred on March 16, 2020, let alone appeal any adverse determination. (Doc. No. 73, Miller Decl. ¶¶ 3, 4).

Second, "Section 1983 imposes liability only on a defendant who was personally involved in the unconstitutional action that caused the plaintiff's injury." Pineda v. Hamilton Cty., 977 F.3d

483, 491 (6th Cir. 2020). Thus, "in the face of [a] motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." Id.

Here, the alleged violation was the improper use of pepper spray, but Plaintiff conceded in his deposition that Cpl. Chambers did not pepper spray him. (Doc. No. 72-1, King Depo. at 38). As for Lt. Popovitch, Plaintiff claims he saw him with "the big mace can," but concedes he turned his back to the group that was then gathered in front of the cell and can only "guess" it was Lt. Popovitch who sprayed him. (Id. at 36, 40). "[A] plaintiff does not meet this burden by showing only that a defendant was 'one of' several others who might have committed the unconstitutional act." Pineda, 977 F.3d at 491. Further, according to the declaration of Lieutenant Michael Graulau, he is the one who "administered a single spray of a chemical agent into [Plaintiff's] cell early on the morning of March 16, 2020, and "[n]o other DCSO personnel used force on [Plaintiff] on that date." (Doc. No. 77, Graulau Decl. ¶¶ 3, 4).

Third, Defendants have asserted that they are entitled to qualified immunity and, once raised, it is Plaintiff's burden to show non-entitlement. Chappell v. City Of Cleveland, 585 F.3d 901, 907 (6th Cir. 2009). Plaintiff has not carried that burden because he has not shown a constitutional violation at the hands of either Cpl. Chambers or Lieutenant Popovitch. See Hayden v. Green, 640 F.3d 150, 153 (6th Cir. 2011) ("And with no constitutional violation, [defendant] is entitled to qualified immunity.").

Accordingly, Defendants' Motion for Summary Judgment (Doc. No. 70) is **GRANTED**. The Clerk of the Court shall enter a final judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure and close this file.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE